Milton JUSTICE a/k/a Allahu Mohammad Akbar

v.

Joseph FABEY and City of Philadelphia.

Civ. A. No. 81–4768.

United States District Court, E. D. Pennsylvania.

April 13, 1982.

---

Steven M. Kramer, Philadelphia, Pa., for plaintiff.

Gerald T. Clark, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This civil rights action arises out of the seizure of a truck in the possession of plaintiff Milton Justice, a/k/a Allahu Mohammad Akbar, by Joseph Fabey, an officer of the Philadelphia Police Department. Plaintiff alleges that, prior to his purchase of the truck the Police Department had obtained the truck in a raid on the Evans Transportation Company, seizing it as stolen property. Some time later, so plaintiff alleges, Zappone Brothers Corp., purchased the truck for the use of its parts from the Philadelphia Police Department Pound, without obtaining a certificate of title.[1] In May of 1976, it is further alleged, plaintiff purchased the truck from Zappone Brothers and apparently remained in possession until April 1981, at which time the Police Department ascertained the identity of the original owner of the stolen truck, seized it from plaintiff, and returned it to its Alabama owner. As a result, plaintiff contends that he has been deprived of his property without a hearing and hence without due process of law, and accordingly seeks redress under 42 U.S.C. § 1983.

Defendants Joseph Fabey and the City of Philadelphia have moved to dismiss plaintiff's action for failure to state a claim upon which relief may be granted.[2] While defendants' motion to dismiss was pending, plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and moved to amend his complaint pursuant to Rule 15(a).

### I.

In moving to dismiss, defendants acknowledge that no hearing was held at the time when the truck was seized, but they contend that because plaintiff admitted in his pleadings that he was not the "true owner" of the vehicle in question, plaintiff has no property right on which to base his due process claim and that accordingly there was no issue to resolve at a hearing. Defendants' assertion concerning plaintiff's lack of a property entitlement depends in the first instance of course on Pennsylvania

---

1. Although plaintiff appears to contend that purchasing a vehicle only for the use of its parts obviates the requirement of obtaining title, Pennsylvania law seems to be to the contrary. 75 Pa.C.S.A. 1101 *et seq.*

2. Because plaintiff has only alleged a violation of 42 U.S.C. § 1983, and has not asserted a cause of action directly under the Fourteenth Amendment, it is not necessary to address defendants' contention that plaintiff has failed to state a claim pursuant to the Constitution of the United States.

law. But while plaintiff may not be able ultimately to establish title to the truck, such an *ex post* conclusion is not dispositive. The focus of this litigation must be on plaintiff's relationship to the truck at the time the police seized it. Thus, the central question in this case is whether at the point of seizure plaintiff's possession of the truck established, under Pennsylvania law, some presumptive entitlement to the truck so that the police were required by the due process clause to provide a hearing before an impartial official to determine who had proper title to the truck. If, as it appears from the pleadings, that determination was open to dispute at the time of the seizure by virtue of plaintiff's possession, then due process may require the police to provide plaintiff with some opportunity to demonstrate his claim of ownership.

█ Where, as here, plaintiff alleges a deprivation of property without due process, whether plaintiff has stated a cause of action turns on whether he had a constitutionally cognizable property interest in the truck. *See Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Cobb v. Aytch*, 472 F.Supp. 908, 925–926 (E.D.Pa. 1979). Because property interests do not stem from the Constitution itself, but are created and defined by an independent source such as state law, *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709, it becomes necessary to look to the law of Pennsylvania to determine the nature of plaintiff's interest in the truck.

█ Section 2–403 of the Uniform Commercial Code, as adopted by Pennsylvania, 13 Pa.C.S.A. § 2403, provides that "a purchaser of goods acquires all title which his transferor had or had power to transfer..." *Id.* at § 2403(a). Further, a person with voidable title—that is, one who has obtained goods through the assent of the original owner but who may not have acquired good title—"has power to transfer a good title to a good faith purchaser for value." *Id.* One who has acquired goods by theft, however, cannot confer title by sale, even to a *bona fide* purchaser. *Kenyatta v. Kelly*, 375 F.Supp. 1175, 1179 (E.D. Pa.1974); *Linwood Haverstore Inc. v. Cannon*, 427 Pa. 434, 235 A.2d 377 (1967).[3] Assuming that plaintiff was a *bona fide* purchaser for value from Zappone Brothers, who in turn purchased in good faith from the Philadelphia Police Department, the threshold question with respect to plaintiff's acquisition of some significant property interest is whether either transferor had power to convey *at least* a voidable title to the truck. Under Pennsylvania property law, it appears that since both Zappone Brothers and the City's possession of the truck are ultimately traceable to the initial theft, neither had power to transfer good title to plaintiff.

█ However, while plaintiff may not be able ultimately to establish good title to the seized truck under Pennsylvania law, this does not conclusively determine whether the police were required under the due process clause to afford him some kind of hearing when they sought to take possession of the truck. It is clear that the Fourteenth Amendment not only safeguards rights of undisputed ownership, but also extends to any other significant property interest. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). The fact that a possessor's claim of ownership may be disputed does not negate the existence of a property interest or his right to procedural safeguards mandated by the Fourteenth Amendment. *Davis v. Fowler*, 504 F.Supp. 502, 505 (D.Md.1980). As the Supreme Court has stated, "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709.

---

**3.** *But see, Johnny Dell v. N. Y. State Police*, 375 N.Y.S.2d 545, 84 Misc.2d 360 (N.Y.Sup.Ct. 1975) (sale of stolen vehicle to bona fide purchaser by merchant who deals in used cars does result in the conveyance of good title).

■ It is settled in Pennsylvania that possession of a chattel is deemed to be *prima facie* evidence of ownership.[4] *Leitch v. Sanford Motor Truck Co.*, 279 Pa. 160, 123 A. 658 (1924). Thus, any person claiming ownership of property which is in the possession of another bears the burden of proving facts essential to his claim of ownership. *In Re Carr's Estate*, 371 Pa. 520, 92 A.2d 213 (1952). And while there appears to be no clear Pennsylvania authority on the matter, it would seem that one's earlier possession of property, which has subsequently been seized, is *prima facie* evidence of one's entitlement to the property. *United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir.1979); *Davis v. Fowler, supra*, 504 F.Supp. at 505.

■ Plaintiff alleges that, at the time Officer Fabey seized his truck, he had enjoyed undisturbed possession of the truck for almost five years. He further alleges that during this time he expended a considerable amount of money to maintain and virtually reconstruct the vehicle.

Therefore, in light of Pennsylvania law which attaches a presumption of entitlement to one in possession, and the broad protection afforded by the Fourteenth Amendment, I find that plaintiff's complaint alleges facts constituting a property interest in the truck sufficient to impose upon government officials a due process obligation not to terminate plaintiff's possession of the truck without according him a hearing to adjudicate his claim of ownership.

■ Because due process is a flexible concept, however, the content and timing of constitutionally required protections will vary depending upon the exigencies of the particular situation presented. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1974). To determine the contours of the procedural protections which may be mandated in a given instance, it is necessary to balance the individual and governmental interests implicated in the dispute. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Supreme Court in *Mathews, supra*, set forth three factors to be examined in making such an evaluation:

> First, the private interest that will be affected by the official action;
>
> Second, the risk of an erroneous deprivation of such interest through the [use of existing] procedures, and the probable value, if any, of additional or substitute procedures; and,
>
> Third, governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

Applying the *Mathews* criteria to the instant case, it seems clear that the plaintiff has a substantial interest in the uninterrupted use of the truck, which he had been utilizing as a means of making a living. *See Stypmann v. City of San Francisco*, 557 F.2d 1338, 1341 (9th Cir. 1977); *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir. 1976). The absence of any pre-deprivation procedure in which he might have had the opportunity to protest such a seizure, rendered the risk of erroneous deprivation great. This risk would certainly have been diminished by the interposition of some procedural safeguards.[5] The City, on the other

---

4. Plaintiff's failure to obtain title is not dispositive of the question whether he had a property interest in the truck. While a certificate of title is an indicium of ownership, and may establish the person entitled to possession, such a certificate is not conclusive evidence of ownership. *Summer's Estate*, 424 Pa. 195, 198, 226 A.2d 197, 199 (1967); *Weigelt v. Factor's Credit Corp.*, 174 Pa.Super. 400, 404, 101 A.2d 404, 406 (1953); *Carr v. Keller*, 26 Cumb. 245, 74 Pa. D & C 2d 534 (1976).

5. The question of ownership is "inherently subject to factual determination and adversarial impact." *Stypman v. City of San Francisco, supra*, 557 F.2d at 1343 n.18. Thus, although additional procedures might be of little assistance to this plaintiff, in light of Pennsylvania law, he should not be precluded from presenting his case for consideration of his claim to the seized truck.

hand, has a legitimate interest in promptly returning stolen property to its lawful owner; and the City's interest in expedition and economy counsel against a time-consuming and elaborate inquiry.

■■■■■ Although a governmental interest in efficiency and economy may be a relevant consideration, it is not controlling. *Mathews v. Eldridge, supra,* 424 U.S. at 319, 96 S.Ct. at 895. Since vindication of the City's interest in returning stolen property would merely be delayed, not defeated, by some procedural framework, the balance of the affected interests calls for providing some protection to the private interest here at stake. Nonetheless, it does not necessarily follow that a constitutionally required hearing must occur *prior* to such a deprivation of property. Where only property interests are implicated, post-deprivation hearings have been found to be constitutionally sufficient when a prior hearing would have been inconsistent with "a countervailing . . . interest of overriding significance." *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). Thus, for example, post-deprivation hearings have been found to satisfy due process in emergency actions during wartime, *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (imposition of rent controls); where immediate action is required to safeguard public health, *North American Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (impounding of impure food); and where a prior hearing would present an opportunity for private individuals to frustrate governmental interests through evasion. *Calero-Toledo v. Pearson Yacht Leasing,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (seizure of yacht used to transport marijuana). Similarly, pre-deprivation hearings have not been required where the incremental benefits associated with such procedures did not justify the costs of their imposition. *See Ingraham v. Wright, supra,* 430 U.S. at 683, 97 S.Ct. at 1419; *Mathews v. Eldridge, supra,* 424 U.S. at 348, 96 S.Ct. at 909. In *Fuentes v. Shevin, supra,* the Supreme Court indicated that the seizure of a property interest without a prior

hearing may be constitutionally permissible where the seizure is necessary to serve an important governmental need, and where the person initiating the seizure is a responsible governmental official bound by statute to act only upon justifiable grounds in initiating the seizure in the first instance. *Id.* 407 U.S. at 94 n.30, 92 S.Ct. at 2001 n. 3; *see also Calero-Toledo v. Pearson Yacht Leasing, supra,* 416 U.S. at 679, 94 S.Ct. at 2089.

■■■ The considerations which justified the deferral of due process requirements in the above-mentioned cases are also present here. In the case at hand, Officer Fabey seized plaintiff's truck pursuant to a City ordinance governing the return of evidence. Because property of this kind can be easily removed from the jurisdiction or otherwise concealed, it is possible that a notice and hearing prior to the seizure would have resulted in the frustration of the City's affirmative obligation to return the vehicle promptly to its titleholder in Alabama. In this case, therefore, I conclude that (assuming the truth of the allegations in the complaint) the constitution required no more than—but also no less than—a hearing conducted reasonably promptly. *See e.g., United States v. Eight Thousand Eight Hundred Fifty Dollars,* 645 F.2d 836 (9th Cir. 1981); *United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297, 1304 (3rd Cir. 1978); *Pollgreen v. Morris,* 496 F.Supp. 1042 (S.D.Fla.1980).

## II.

■■■ Defendants further argue that, even if plaintiff has asserted a constitutionally cognizable property interest, the complaint fails to state a claim under section 1983 against the City because it does not allege that the unconstitutional conduct complained of is the product of a governmental policy or custom which is so well settled as to have the force of law. *See Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Plaintiff concedes that the allegations contained in his complaint are deficient in this respect, and has asked

for leave to amend his complaint so he may allege that Officer Fabey's seizure of his vehicle was pursuant to a City rule which governs the return of evidence. Accordingly, I will grant defendants' motion to dismiss plaintiff's action against the City without prejudice so that plaintiff may have an opportunity to conform his allegations to the requirements of *Monell.*

### III.

 Turning to plaintiff's motion for summary judgment, I note that the filing of such a motion during the pendency of a motion to dismiss and before a defendant has had an opportunity to answer the complaint, does not itself render the motion premature. *See Stein v. Oshinsky*, 348 F.2d 999 (2d Cir. 1965); 6 Moore's *Federal Practice* ¶ 56.07; Fed.R.Civ.P. 56(a), Advisory Committee Notes. But because I have dismissed plaintiff's action against the City of Philadelphia without prejudice, in order to allow the plaintiff to amend his complaint in conformity with this opinion, it appears unwise to dispose of his motion for summary judgment at this time. Accordingly, I will deny without prejudice plaintiff's summary judgment motion.

### IV.

Plaintiff has also moved to amend his complaint so that he may change the name of the party plaintiff from Milton Justice, a/k/a Allahu Mohammad Akbar to Allahu Mohammad Akbar, a/k/a Phillip Frederick Jordan. Plaintiff contends that his counsel was mistaken in his belief that his original name was Milton Justice. It is defendants' position, however, that Milton Justice and Phillip Frederick Jordan are two distinct persons, and that plaintiff's counsel is in fact attempting to substitute party plaintiffs. Defendants therefore request an evidentiary hearing so that the proper identity of the plaintiff may be conclusively established.

 In the absence of undue prejudice to the opposing party, leave to amend should be liberally granted pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A determination whether the granting of an amendment would be potentially prejudicial requires consideration of the good faith of the party seeking to amend, *Danzy v. Johnson*, 417 F.Supp. 426 (E.D.Pa.1976), *aff'd*, 582 F.2d 1273 (3rd Cir. 1976); the extent to which there has been undue delay in proffering the amendment, *L. D. Schreiber Cheese, Inc. v. Clearfield Cheese Co.*, 495 F.Supp. 313, 315 (W.D.Pa.1980); and the degree to which that amendment would delay final disposition of the case. *Albee Homes, Inc. v. Lutman*, 406 F.2d 11 (3rd Cir. 1969).

 In the case at hand, plaintiff's motion to amend comes only four months after the filing of his original complaint and, if granted, would not delay disposition of the case. And although defendants assert that the motion to amend raises a factual question as to the proper identity of the plaintiff, no evidence has been presented which would suggest that plaintiff's counsel was not honestly mistaken in his knowledge of his client's former identity. Because this name change will in no way affect defendants' burden at trial, an evidentiary hearing prior to trial would not seem necessary. Accordingly, I will grant plaintiff's motion to amend, pursuant to Rule 15 of the Federal Rules of Civil Procedure.