**Robert L. SERIO, et al.**

v.

**BALTIMORE COUNTY, et al.**

**Civil No. CCB–00–652.**

United States District Court, D. Maryland.

July 20, 2000.

William N. Butler, Towson, MD, for Plaintiff.

James H. Cook, Cook, Howard, Downes & Tracy, Towson, MD, Jeffrey Grant Cook, Ass't County Atty., Towson, MD, for Defendant.

### MEMORANDUM

BLAKE, District Judge.

This case is before the Court on a motion for summary judgment filed by the Defendant, Baltimore County ["the County"]. On July 20, 1999, the Plaintiff, Rob-ert L. Serio, filed a complaint in Baltimore County Circuit Court, naming the County and an officer of the Baltimore County Police Department ["BCPD"], Steven Russo, as defendants. In the complaint, Serio contested the County's actions in seizing weapons from his residence while executing a search warrant, and he alleged that Russo violated his rights under Article 24 of the Maryland Declaration of Rights. The Circuit Court signed an order on July 20, 1999, requiring the BCPD to preserve the seized property. Defendants moved to dismiss the complaint on August 17, 1999, and Serio filed an opposition on September 27, 1999. Serio then amended the complaint on December 3, 1999, adding Bruce Stanski as a plaintiff on the grounds that Stanski wanted to purchase the seized weapons from Serio. Defendants moved to dismiss the amended complaint on December 21, 1999, and Plaintiffs filed an opposition on January 13, 2000.

After a motions hearing, the Circuit Court dismissed the claim against Russo, held that Stanski had no standing, and dismissed the claims against the County, though Serio was granted leave to amend his complaint. Serio filed his second amended complaint on February 18, 2000, adding a federal count, pursuant to 42 U.S.C. § 1983, for violations of his rights under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution. The County removed the case to this court on March 7, 2000, and moved for summary judgment on March 14, 2000. On April 5, 2000, Serio filed both an opposition to the County's motion and a motion for a continuance pursuant to Federal Rule 56(f). The County filed its reply on April 19, 2000, and also filed an opposition to Serio's motion for a continuance.[1] On May 22, 2000, Serio moved for leave to amend his complaint.[2] The County filed its opposi-

---

1. Serio filed a response to the County's reply on May 11, 2000, which prompted the County to move to strike the response on May 19, 2000.

2. The most recent amendments proposed by Serio would insert a reference to double jeopardy in Count VI and a reference to the Four-teenth Amendment in Count VII, while also adding a new Count VIII seeking a declaratory judgment as to Serio's constitutional rights. The Court will grant Serio's motion to allow him to amend Counts VI and VII; however, as discussed *infra,* the Court will deny leave to amend to add proposed Count VIII. The

tion to the amendment on June 5, 2000. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the Court will grant the County's motion, deny Serio's motions, and dismiss his claims for relief.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all reasonable inferences drawn in her favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997)(citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of

a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### BACKGROUND

In the early morning hours of October 8, 1998, the Plaintiff, Robert L. Serio, drove his Porsche 911 into a guardrail on York Road in Baltimore County. Def.'s Mot. Summ. J. ex. 1. As a result of the accident, the automobile flipped over and Serio's passenger, Stacey Corbin, was ejected from the vehicle. *Id.* Emergency medical personnel pronounced Corbin dead at the scene. *Id.* On April 13, 1999, Serio pleaded guilty to one count of manslaughter by automobile in Baltimore County Circuit Court and subsequently received a sentence of six months' incarceration. Pl.'s 2d Am. Compl. at 2. Manslaughter by automobile is a felony under Maryland law. Md. Ann.Code of 1957 Art. 27 § 388 (1996 & 1999 Supp.). Serio accordingly is prohibited by Maryland law from possessing certain firearms. Art. 27 § 445(d)(1)(ii).

One of the officers investigating the incident was Steven Russo of the BCPD. *Id.* At some point during the investigation, Russo allegedly learned from the Plaintiff's wife—Gina Serio— that Serio stored numerous weapons in his home. *Id.* at 3. The Serios were engaged in divorce litigation at the time. *Id.* at 2. On June 2, 1999, Russo and other BCPD officers prepared an "Application and Affidavit for Search and Seizure Warrant," which they submitted to the Baltimore County District Court. *Id.* at 6. Associate Judge Vicki

third amended complaint, therefore, asserts the following counts:

I. Article 27 § 551(a) Request for Restoration;
II. Article 27 § 551(b) Request for Return of Property;
III. Article 27 § 551(c) Restoration;
IV. Damage to Property;
V. State Constitutional Torts (against Russo);
VI. State Constitutional Torts (against the County) for violations of Articles 19, 21, 24, and 25 of the Maryland Declaration

of Rights and the common law double jeopardy doctrine;
VII. 42 U.S.C. § 1983 action for violations of Fourth, Fifth, Eighth, and Fourteenth Amendment rights under U.S. Constitution.

As noted, the parties agree that Judge Daniels dismissed Counts I through V. The Court will also dismiss Serio's Article 21 claim under Count VI because there is no criminal prosecution at issue in this case. The remaining claims are addressed *infra*.

Watts signed the warrant on June 2, 1999, finding

> probable cause to believe that goods subject to seizure under the laws of the State of Maryland, dealing with Firearms in violation of Article 27, Section 445d (pertaining to prohibited persons possessing firearms), United States Code, Title 18, Section 922G (pertaining to prohibited persons with firearms), are now concealed in and upon the premises known as 1 Glen Falls Path, Sparks, MD 21152 and the person of Robert Louis Serio M/W 02/11/55 in the Cockeysville District of Baltimore County, Maryland.

Pl.'s Compl. ex. 2 (emphasis omitted). The warrant authorized the BCPD to enter and search the premises and seize "any firearms and any ammunition, boxes, receipts, or manuals relating to said firearms...." *Id.* That same day, Russo and other officers executed the warrant. Pl.'s 2d Amend. Compl. at 6. As a result, they seized a variety of firearms and related materials, including seven handguns, five rifles, a shotgun, a silencer, and various magazines and ammunition. Pl.'s Compl. ex. 3.

Serio filed a complaint against the County and Russo in Baltimore County Circuit Court on July 20, 1999, seeking the return of his property under Article 27, Section 551(a)-(c)[3], requesting damages for any harm to the property, and alleging that Russo violated his rights under Article 24 of the Maryland Declaration of Rights. Judge Lawrence R. Daniels signed an order on July 20, 1999, requiring the BCPD to preserve the property it seized from Serio. After Serio amended the complaint to add Stanski as a plaintiff, Defendants moved to dismiss.

Judge Daniels presided over a hearing on the County's motion on February 7, 2000. Def.'s Mot. Summ. J. ex. 10 at 1. During the course of the proceedings, Judge Daniels held that Serio had constructive possession of the firearms at the time they were seized by Baltimore County. *Id.* ex. 10 at 31–32. At the end of the hearing, the Judge granted summary judgment to the County on the issue of possession and dismissed the case against Russo with prejudice. *Id.* ex. 10 at 41. In addition, Judge Daniels granted Serio leave to amend his complaint to add the "issue of excessiveness under the Eighth Amendment" and noted that "[t]he case is to go only for either a hearing or trial before the Court as to [that] issue...." *Id.* ex. 10 at 41–42. Finally, Judge Daniels held that Stanski lacked standing to continue as a

---

3. Article 27, Section 551 provides, in relevant part:

(a) *Applications, affidavits, and oral motions for search warrants.* ... If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it appears that the property taken [under a search warrant] is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued ... said judge must cause it to be restored to the person from whom it was taken.... However, if it appears that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law.

(b) *Return of seized property.*—If the criminal case in which property of a person was seized pursuant to a search warrant issued under subsection (a) of this section is disposed of because of (i) an entry of nolle prosequi, (ii) dismissal, or (iii) acquittal, or if the State does not appeal ... all property of the person, except contraband or any property prohibited by law from being recoverable, may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding against the agency having custody of the property.

(c) *Wrongful of* [sic] *retention of property; oral motion for return of property; petition and order for return of property.*—(1) If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

plaintiff in the case. *Id.* ex. 10 at 42. An Order issued that same day recounted these holdings and stated that "the case is dismissed as to Defendant Baltimore County, subject to the Plaintiff amending the existing complaint which is to be filed within 15 days of February 7, 2000...." Pl.'s Opp'n ex. 4.

Serio then filed his second amended complaint, adding a count for violations of the Maryland Declaration of Rights, and a cause of action pursuant to 42 U.S.C. § 1983. Pl.'s 2d Compl. at 13–15. The County removed the case to this court[4] on March 7, 2000, and filed for summary judgment one week later.

The record before the Court shows that the seized weapons remain in the possession of the BCPD, and there is no indication that the County has taken steps to dispose of them. Indeed, nothing in the record indicates that the July 20, 1999, Order for Preservation of Property signed by Judge Daniels has been altered. Furthermore, the County has not initiated a criminal prosecution against Serio for a violation of Article 27, section 445(d), or any other offense. Pl.'s 2d Compl. at 7–8. Likewise, there is no indication that Serio or the weapons have been the subject of criminal or civil forfeiture proceedings. *Id.* The parties agree that both Russo and Stanski have been removed from the case and that Counts I–V of the complaint have been dismissed.

## ANALYSIS

■ Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983 (1998). Because municipalities—such as Baltimore County—qualify as "persons" for the purposes of Section 1983, they can be liable for damages when they deprive citizens of federal rights. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality, however, may not be held liable simply because it employs a tortfeasor. *See id.*

■ To establish municipal liability under § 1983, the plaintiff must show that: (1) a government actor deprived the plaintiff of his or her federal rights; and (2) the harm was the result of a municipal "policy, custom, or pattern." *Id.* The logical first step in evaluating claims of municipal liability, therefore, is to determine whether a constitutional violation occurred in the first place.

### Due Process

In the present case, several of Serio's constitutional claims are before the Court. The first such claim involves Serio's allegation that Baltimore County's seizure and retention of his weapons has deprived him of due process in violation of the Fourteenth Amendment to the U.S. Constitution. The Fourteenth Amendment prohibits a state from depriving a person of property without due process of law. *See, e.g., Davis v. Fowler,* 504 F.Supp. 502, 505 (D.Md.1980). To prevail on his due process claim, Serio must show that (1) he had property or a property interest; (2) Baltimore County deprived him of that property interest; and (3) it did so without due process of law. *See Smith–Berch, Inc. v. Baltimore County,* 68 F.Supp.2d 602, 627 (D.Md.1999).

■ The Constitution itself does not create property interests; rather, they are created and defined by independent sources, such as state law. *See id.* (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

---

**4.** · Although the County had a statutory right to remove this case to federal court, it may have been better advised to seek resolution of the outstanding claims in state court. The present case is an example of the confusion and delay that can result when a case is removed to federal court, particularly when the state judge has resolved certain issues and allowed amendments to the complaint based on his or her understanding of the case.

Although prior ownership of personal property seized from a person's residence would generally support a legitimate claim of entitlement to that property, *see Davis*, 504 F.Supp. at 505, the present case is more complicated. Serio claims a property interest in firearms seized by the County from his home pursuant to a search warrant which, in turn, was issued based on allegations of criminal activity. Specifically, the warrant found probable cause to believe that Serio—a convicted felon—was in possession of regulated firearms[5] in violation of Article 27, section 445(d). *See* Pl.'s Compl. ex. 2. Serio contends that section 445(d) does not divest him of all property rights in the firearms. Instead, he asserts that he maintains an ownership interest in the weapons, though he may not legally possess them. In contrast, the County argues that convicted felons in Maryland have no recognized property interest in regulated firearms.

■ Pursuant to its police power, a state may restrict property rights in the interest of public health and safety. *See, e.g., PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). In Maryland, the legislature has decided that felons have no possessory right in regulated firearms, as demonstrated by the passage of section 445(d). In addition, the legislature has authorized law enforcement agencies to seize regulated firearms possessed by convicted felons. *See* Art. 27 § 445B. Taken together, these

provisions indicate that convicted felons have few, if any, property interests in regulated firearms.

■ It does not follow, however, that the legislature has removed all property interests that convicted felons may have in regulated firearms. Maryland courts recognize as "property" any "interest or estate which the law regards of sufficient value for judicial recognition." *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318, 1322 (1995). The common law concept of property refers to the right and interest a person has in an object, which extends beyond ownership and possession to include the lawful, unrestricted right of use, enjoyment, and disposal of the object. *See* 63C Am.Jur.2d Property § 1 (1997). In other words, property is a collection of rights, which includes the right of possession. *See id.*

■ It follows logically that removing a person's right of possession in an object does not necessarily remove all of his property interests in that object. Therefore, even though the Maryland convicted felon statute—section 445(d)—may have removed convicted felons' possessory interests in regulated firearms, it did not remove all of their property interests. A convicted felon such as Serio may have no right to possess regulated firearms, but he may retain a constitutionally-protected property interest in those weapons.[6] *See Cooper v. City of Greenwood*, 904 F.2d 302, 304–06 (5th Cir.1990)(finding that convict-

**5.** The Maryland Code defines "regulated firearm" to include any "handgun" or "assault weapon." Art. 27 § 441(r). A "handgun" is any firearm with a barrel less than sixteen inches long, Art. 27 § 441(n), and an "assault weapon" is any firearm listed in Article 27, section 441(d). The record indicates that the County seized various firearms from Serio's residence, at least some of which fall within the definition of "regulated firearms." *See* Pl.'s Compl. ex. 3.

**6.** The situation may be different in cases where the seized items qualify as contraband per se. Courts have long recognized contraband per se as property that the legislature has declared to be "intrinsically illegal in character," "the possession of which, without

more, constitutes a crime"—e.g., controlled substances. *Cooper v. City of Greenwood*, 904 F.2d 302, 304–05 (5th Cir.1990)(quoting *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)). "Courts will not entertain a claim contesting the confiscation of contraband per se because one cannot have a property right in that which is not subject to legal possession." *Id.* at 305. Regulated firearms are not inherently illegal in Maryland, and their possession, standing alone, is not a crime. Possession becomes illegal only in certain circumstances; for example, when the possessor is a convicted felon. As such, Serio's firearms would not qualify as contraband per se by traditional standards.

ed felon had ownership interest in seized firearms for purposes of due process analysis); *United States v. Seifuddin,* 820 F.2d 1074, 1078–79 (9th Cir.1987)(holding that convicted felon had non-possessory property interest in seized firearms sufficient to confer standing to contest forfeiture); *Covington v. Winger,* 562 F.Supp. 115, 123–24 (W.D.Mich.1983)(finding that convicted felon had constitutionally-protected property interest in seized firearms), *aff'd,* 746 F.2d 1475 (6th Cir.1984). This remaining interest—whether it be called ownership, title, or simply a non-possessory right—qualifies as a property interest protected by constitutional due process[7], thereby allowing Serio to establish the first part of his due process claim.

The Court also finds that the County's seizure of Serio's firearms has deprived him, at least temporarily, of any remaining property interest he has in them. Although section 445(d) itself removed Serio's rights to possess or use regulated firearms, the County's seizure undoubtedly prevents Serio from alienating or disposing of the property. Therefore, Serio can satisfy the second part of the due process test.

■ The critical third step of the due process inquiry requires Serio to prove that he has been deprived of his property rights in the firearms without due process of law.[8] Here, Serio's claim begins to deteriorate. He does not challenge the validity of the firearms seizure law, Article 27, section 445B, or the Maryland search

warrant statute, Article 27, section 551, which establishes various procedures for the disposition and, where appropriate, return of seized materials. Serio has challenged the sufficiency of the search warrant that authorized the seizure of his weapons, but Judge Daniels dismissed those claims. In other words, at this stage in the proceedings, Serio does not make a facial challenge to the applicable statutes; instead, he challenges the County's execution of the statutes on due process grounds.

An examination of the County's actions, however, indicates that there has been no denial of due process as of this time. The County has not disposed of Serio's weapons or proposed to do so. *Cf. Cooper,* 904 F.2d at 306 (finding a due process violation where municipality seized and sold felon's weapons without providing notice or a hearing). Indeed, the County remains under judicial order to protect the firearms; therefore, any steps taken by the County to dispose of the weapons would trigger judicial intervention. In addition, the statute authorizing the seizure of regulated firearms provides that the firearms "may be ... after a finding of guilt, disposed of according to the regulations of the seizing law enforcement agency." Art. 27 § 445B. It is clear, therefore, that in carrying out this provision, the County may dispose of seized firearms only after a conviction. If there is no conviction and the County wishes to dispose of the property, some process would be necessary.[9] *See* Art. 27

---

**7.** This interest implicates due process protections even if it is subject only to a temporary deprivation. *See Fuentes v. Shevin,* 407 U.S. 67, 84–85, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

**8.** In determining what process is due, a court must consider three distinct factors: (1) the plaintiff's interest affected by the seizure; (2) the risk of erroneous deprivation of plaintiff's interest by the procedures employed, and the value of additional procedural safeguards; and (3) the governmental interest involved. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**9.** The County argues that section 445B is "self-executing," but the Court disagrees. The Due Process Clause forbids the government from summarily seizing and disposing of private property (other than contraband per se, discussed *infra*) without a hearing to determine whether the property is subject to forfeit or destruction as contraband. *See, e.g., Lowther v. United States,* 480 F.2d 1031, 1033–35 (10th Cir.1973); *Davis v. Fowler,* 504 F.Supp. 502, 505–06 (D.Md.1980). Indeed, sections 445B and 551 acknowledge these due process restraints. The language of 445B clearly states that disposition of firearms seized pursuant to the statute may be disposed of only after a finding of guilt. Therefore, although 445B may be self-executing to

§ 551(b); *see also Davis v. Fowler,* 504 F.Supp. 502, 506 (D.Md.1980)("due process requires that a property interest not be divested finally without some kind of a hearing.") Because the County has not indicated an intent to waive prosecution or dispose of the weapons, the Court can discern no actionable claim at this time.

 Similarly, at this point, the Court can find no constitutional violation in the County's retention of the firearms. The County seized Serio's weapons pursuant to a judicially-approved search warrant, issued in reliance on an allegation of criminal activity, and the County continues to hold the weapons. "The general rule is that seized property, other than contraband, should be returned to. its rightful owner once the criminal proceedings have terminated." *United States. v. Farrell,* 606

F.2d 1341, 1343 (D.C.Cir.1979)(quoting *United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir.1977)); *see also* Art. 27 § 551(b). Property that is the instrumentality of a crime and has been properly seized, however, may be retained by the government for use at trial to the extent it is relevant.[10] *See Farrell,* 606 F.2d at 1347; *In re a Special Investigation No. 228,* 54 Md.App. 149, 458 A.2d 820, 833 (Ct.Spec.App.1983). Here, the County is entitled to the presumption that the seizure it sought in the search warrant was for the purpose of a criminal prosecution, even if one has not been initiated. Section 551(b) establishes a procedure for the return of property if a criminal prosecution terminates [11]; however, because there is no indication that the County has decided to forego Serio's prosecution, the process in 551(b) has not been implicated.[12]

the extent that it authorizes seizures, it cannot be said that 445B provides the government with authority to retain or dispose of seized firearms absent a finding of guilt. If a conviction is not forthcoming, the continued retention of. seized firearms is subject to the provisions of section 551(b), which authorizes the government to retain "contraband or any property prohibited by law from being recoverable[.]" Any person who seeks to challenge the government's retention of his property must demonstrate that it is being "wrongfully withheld" and "there is no further need for retention[.]" Art. 27 § 551(c)(1). As explained *infra,* the pendency of criminal or forfeiture proceedings, where the property serves as evidence or the *res,* will generally justify the government's retention of such property.

**10.** Provided there is a nexus between the seized items and criminal behavior, the government is authorized to seize and retain such items in furtherance of the public interest in solving crimes and preventing further crime. *See Warden v. Hayden,* 387 U.S. 294, 306–07, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *see also In re a Special Investigation No. 228,* 54 Md.App. 149, 458 A.2d 820, 833 (Ct.Spec.App.1983)(noting that "the State derives its entitlement to seize, to hold, and to use personal property from the very utility of that property as evidence of crime."). In the case of contraband or instrumentalities of crime, this nexus is automatic. *See Warden,* 387 U.S. at 307, 87 S.Ct. 1642. There is no disputing that Serio's firearms are the instrumentalities of the crime prohibited by Article 27, section 445(d), if not derivative contra-

band, *see* Art. 27 § 445B. As such, the County has an overriding interest in seizing and retaining the firearms for the purpose of proving a crime or deterring future ones.

**11.** As discussed *infra,* Serio asserted a claim under section 551(b) in this case, but the claim was dismissed by Judge Daniels. Serio has indicated that he will appeal Judge Daniels' rulings. *See* Pl.'s Opp'n at 14.

**12.** Moreover, the Court notes that if the property qualifies as contraband or "property prohibited by law from being recoverable," Article 27 § 551(b), the County is not required to return it. This issue, however, is not currently ripe for decision, nor have the parties presented it to the Court. Once the criminal prosecution terminates and the County claims that the weapons are either contraband or not recoverable, then this issue will become ripe. Along the same lines is the County's prerogative to seek forfeiture of seized property. Naturally, where property is subject to forfeiture, courts will not order the government to return it to the claimant. *See United States v. Farrell,* 606 F.2d 1341, 1347 (D.C.Cir.1979). Here, the County has not indicated whether it will institute forfeiture proceedings, and any attempt to anticipate the County's actions would be mere guesswork. Nevertheless, the Court notes that anticipated statutory forfeiture may make the property "not recoverable" under section 551(b) or provide a "further need for retention" under section 551(c). Due process, however, requires the County to initiate any forfeiture proceedings within a

Of course, the County may not hold Serio's property indefinitely absent a finding of guilt or a determination that the property is not recoverable, whether that determination is made under section 551 or in the course of forfeiture proceedings. *See United States v. $8,850 in United States Currency,* 461 U.S. 555, 564–70, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983)(finding that due process requires court to consider several factors in determining whether government initiated forfeiture action within reasonable time). If the criminal prosecution terminates, the procedures of section 551(b) will be implicated. Otherwise, Serio has the opportunity to petition a state judge "at any time" for the return of seized property that "is being wrongfully withheld after there is no further need for retention of the property. . . ." Art. 27 § 551(c)(1). Indeed, Serio has made such a petition in this case, but his claim was dismissed by Judge Daniels. Serio does not challenge the validity of section 551(b) or (c),[13] and he acknowledges that any challenge to Judge Daniels' ruling on the section 551 claims must be asserted on appeal. Moreover, it appears that if Serio can prove there is "no further need for retention" of his firearms, he may once again petition a state judge for return of the property. In any case, absent a challenge to the statute or a live dispute involving Judge Daniels' rulings, Serio cannot identify a due process claim that is actionable at this time.[14]

In his Opposition, Serio seems to concede that he cannot establish a constitutional claim at this juncture. Noting that "it is actually unnecessary to engage in various constitutional analyses" to decide his claims, Serio posits that the "fundamental question" is "[b]y what right does the County hold Plaintiff's property?" Pl.'s Opp'n at 28. The answer is straightforward: although the County may have deprived Serio of his property rights in the seized firearms, Serio has failed to demonstrate how the County failed to provide him with due process of law. The County may retain the items as evidence of Serio's crime, in anticipation of forfeiture, or for confiscation as contraband. It may also dispose of the firearms after a conviction or a finding that the property qualifies as non-recoverable contraband. As explained, such retention or disposal must meet the dictates of due process, adequately provided for in sections 445B and 551. Serio challenged the County's retention under section 551, but that claim failed, and his remedy is an appeal to the Court of Special Appeals. No disposal of the firearms is currently possible without a hearing to remove Judge Daniels' protective order or to determine whether the property is subject to return under section 551. The Court must conclude, therefore, that Serio has failed to establish a denial of due process in this case.[15]

reasonable time. *See United States v. $8,850 in United States Currency,* 461 U.S. 555, 564–70, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

**13.** In any case, a challenge to the validity of Article 27, section 551(b) would most likely fail. "The Due Process Clause . . . is not violated by a requirement that a claimant to governmentally seized property file a claim for the property according to a non-onerous, legally prescribed procedure." *Monson v. Mulligan,* 950 F.Supp. 262, 267 (E.D.Mo.1996)(citing *Johns v. McKinley,* 753 F.2d 1195, 1200–01 (2d Cir.1985)).

**14.** As noted, this decision does not preclude the possibility of a due process claim should the County refuse to return Serio's property

without a criminal prosecution, forfeiture proceeding, or a hearing pursuant to section 551 to determine whether the property is contraband, not recoverable, or subject to retention. *See Davis v. Fowler,* 504 F.Supp. 502, 506 (D.Md.1980).

**15.** The Court will also dismiss Serio's complaint insofar as it relies on Articles 19 and 24 of the Maryland Declaration of Human Rights. Given that "the words and content of these Articles . . . are equivalent to 'due process' as that term is used in the Fourteenth Amendment[,]" *Sanner v. Trustees of Sheppard & Enoch Pratt Hosp.,* 278 F.Supp. 138, 141 (D.Md.), *aff'd,* 398 F.2d 226 (4th Cir.1968), the analysis above precludes Serio from asserting a valid claim under Articles 19 and 24.

### Double Jeopardy

■ Serio's second constitutional claim alleges that the County has subjected him to double jeopardy by punishing him twice for the same crime. The Fifth Amendment to the U.S. Constitution provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. 5. This constitutional protection applies both to successive punishments and to successive prosecutions for the same criminal offense. *See United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Here, Serio claims that the County has subjected him to multiple punishments for the crime of vehicular manslaughter. . Specifically, he contends that the first punishment was imprisonment for the manslaughter conviction and the second punishment was the seizure and retention of his firearms.

The Court disagrees. The record demonstrates that the County seized Serio's weapons based on probable cause to believe he had violated Article 27, section 445(d), which prohibits the possession of regulated firearms by a convicted felon. Because this crime is fully distinct from the crime of manslaughter, there is no danger of multiple punishments for the same offense at this time. Moreover, Serio fails to explain how the seizure of evidence in a criminal investigation, standing alone, constitutes punishment. Even if this seizure were related to the manslaughter conviction, the Court is unable to discern when or how jeopardy would at-

tach prior to forfeiture proceedings or destruction of the property. The Court will therefore dismiss this claim.[16]

### Excessive Fines

■ The Eighth Amendment to the U.S. Constitution prohibits the imposition of "excessive fines." U.S. Const. Amend. 8. The Supreme Court has interpreted the excessive fines clause as limiting the government's power to extract payments as punishment for an offense. *See United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Forfeitures that are punitive, therefore, may qualify as "fines" subject to the strictures of the Eighth Amendment. *See id.* Here, Serio asserts that the County's seizure of his firearms triggered the excessive fines clause, but the Court disagrees. As Serio concedes, the County has not yet instituted a civil or criminal forfeiture action against the seized firearms and, therefore, the Eighth Amendment's "excessive fines" clause has not been triggered. Pl.'s Opp'n at 27. The Court will therefore dismiss this claim.[17] .

### Additional Unresolved Motions [18]

Finally, the Court will deny Serio's motion for a continuance and deny leave to amend the complaint to add a claim for declaratory judgment.[19] Serio requested a continuance pursuant to Federal Rule of Civil Procedure 56(f) on the grounds that he needs more time to conduct discovery on his claim that the County had a policy or custom of constitutional violations.

16. Because Maryland's common law double jeopardy doctrine is equivalent to the double jeopardy protections contained in the Fifth Amendment, *see State v. Barger*, 242 Md. 616, 220 A.2d 304, 306 (1966), the Court will dismiss the common law double jeopardy claim asserted in Count VI of Serio's amended complaint.

17. Maryland courts have held that "the excessive fines provision of Article 25 should be interpreted co-extensively with the excessive fines provision of the Eighth Amendment." *Aravanis v. Somerset County*, 339 Md. 644, 664 A.2d 888, 894 (1995). The Court will therefore dismiss Serio's claim under Article

25 of the Maryland Constitution based on the same analysis.

18. Although the parties continue to address Fourth Amendment issues, Judge Daniels concluded, as a matter of law, that Officer Russo did not commit a constitutional violation within the scope of the Fourth Amendment. In the absence of any Fourth Amendment violation, the County cannot be liable for damages under § 1983, and the Court will dismiss any remaining Fourth Amendment claims.

19. The Court will grant the remainder of Serio's leave to amend.

However, because Serio has failed to prove a specific constitutional violation, the Court finds no need for the requested discovery.

 In addition, the Court will not allow Serio to assert a claim for declaratory judgment in this case. The disposition of a motion to amend is within the sound discretion of the Court, *see Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987), as is the exercise of declaratory judgment authority, *see Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256–57 (4th Cir.1996). Generally speaking, declaratory judgment is appropriate when a judgment will clarify and settle the legal relations in issue, thereby terminating and affording relief from the uncertainty and insecurity involved in the case at hand. *See id.* As the foregoing analysis demonstrates, the present case is rife with uncertainty regarding what the County will do with Serio's property, whether the County will prosecute him, and whether it will initiate forfeiture proceedings. Given this situation, the declaratory relief requested by Serio would place the Court in the untenable position of determining the constitutionality of various potential actions, none of which may be pursued in the end. Accordingly, the Court refuses to grant Serio leave to add a claim for declaratory judgment.

### CONCLUSION

Based on the foregoing analysis, the Court will grant the County's motion for summary judgment on Counts VI and VII of Serio's complaint.[20] Because Judge Daniels has already ruled on Counts I–V of the complaint, the Court will also dismiss these claims pursuant to 28 U.S.C. § 1367(c)(3). In addition, the Court will deny Serio's motion for a continuance and deny, in part, his motion for leave to amend.

A separate order follows.

**20.** Although the County's legal arguments were generally persuasive, the Court laments the excessive use of sarcasm and hyperbole. *See, e.g.,* Def.'s Repl. at 6 ("For readers with a lifetime to spare there is the Plaintiff's 30–page Opposition, on a subject yet to be determined."). The Court understands that parties may be exasperated by certain claims, and that advocates will be zealous in defense of their clients; however, lawyers must at all times exhibit candor to the court and respect to their colleagues, a standard that frowns upon needless hyperbole and cheap shots.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendant's Motion for Summary Judgment is **granted**;

2. Plaintiff's Rule 56(f) Motion for a Continuance is **denied**;

3. Plaintiff's Motion for Leave to Amend the Complaint is **granted in part and denied in part**;

4. Counts VI and VII of the Plaintiff's Amended Complaint are **dismissed**;

5. Counts I–V of the Plaintiff's Amended Complaint are **dismissed** pursuant to 28 U.S.C. § 1367(c)(3);

6. Defendant's Motion for a Protective Order is **dismissed as moot**;

7. The Clerk shall **close** this case; and

8. Copies of this Memorandum and Order shall be mailed to counsel of record.